IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MERIAL LIMITED and MERIAL SAS, | ) ) ) | |
| Movants, | ) ) | |
| v. | ) ) | D. Kan. Case No. 07-MC-219-CM |
| DR. RAYMOND R.R. ROWLAND, | ) ) ) ) | (Related to Case No. 1:06-CV-658 in the U.S. District Court for the District of Columbia) |
| Objector. | ) | |

## MEMORANDUM AND ORDER

### I. Introduction

On August 23, 2007, pursuant to Fed. R. Civ. P. 45(c)(2)(B) & (c)(3)(A), the undersigned U.S. Magistrate Judge, James P. O'Hara, conducted a hearing on a motion to compel filed by Merial Limited and its French affiliate, Merial SAS (collectively, "Merial") **(doc. 1)**.  This  motion seeks to compel the production of certain documents subpoened from Raymond R.R. Rowland ("Dr. Rowland"), an expert witness retained by Intervet, Inc. ("Intervet") in a patent case in the United States District Court for the District of Columbia (the "D.C. Action").  In addition, Merial seeks to require Dr. Rowland to appear for a second deposition once he has produced all the requested documents.  Merial and Dr. Rowland (the latter being represented by the same attorneys as Intervet), filed lengthy memoranda and exhibits before the hearing (*see* docs. 7, 30, 36-39, & 42-43); with leave of court, counsel for

Intervet and Dr. Rowland filed a supplemental declaration on August 27, 2007, limited to one narrow issue (*see* doc. 49).

Merial appeared at the hearing through its counsel, Thomas J. Kowalski, J. Patrick Elsevier, and D.A.N. Chase.  Dr. Rowland appeared though his counsel, Jerry Canada and Samuel P. Logan; also present was Anne Li (although not of record in this case, Ms. Li practices with Mr. Canada's firm).

This order will serve to memorialize the court's ruling and the rationale for same.  As explained below, Merial's motion will be granted in part and denied in part.

## II.  Background

Merial is a joint venture of two large pharmaceutical businesses, Merck and Sanofi-Aventis.  It develops, produces, and sells veterinary pharmaceuticals and vaccines for livestock, pets, and wildlife.  The patent at issue here involves a pig vaccine.

On December 15, 2005, Merial Limited filed suit against Intervet in the United States District Court for the Northern District of Georgia (the "Georgia Action"), alleging that Intervet's sales of a vaccine intended for swine infringed U.S. Patent No. 6,368,601 (the "'601 patent").  Intervet moved to dismiss, asserting that Merial Limited was not an owner of the '601 patent and therefore did not have standing to bring suit.  On April 27, 2006, the Northern District of Georgia dismissed the Georgia Action, without prejudice, as improperly brought.[1]  Prior to the dismissal of the Georgia Action, Intervet filed a separate declaratory

---

[1] *Merial Ltd. v. Intervet, Inc.*, 430 F. Supp. 2d 1357, 1364 (N.D. Ga. 2006).

judgment action against Merial, i.e., the D.C. Action.[2]

On July 11, 2006, after the initiation of the D.C. Action, Intervet retained Dr. Rowland to assist in construing the claims of the '601 patent. Dr. Rowland is a professor and research scientist in the College of Veterinary Medicine at Kansas State University ("K-State") in Manhattan, Kansas. He specializes in swine health matters.

Dr. Rowland has worked actively with Intervet's counsel to develop Intervet's claim construction positions. As part of this effort, Dr. Rowland has traveled from Kansas to Washington, D.C. to meet with Intervet's outside counsel and has engaged in telephone calls with them regarding claim construction.

On Wednesday, May 2, 2007, Intervet filed its opening brief in connection with the anticipated *Markman* hearing in the D.C. Action.[3]  As part of that submission, Intervet included a written declaration by Dr. Rowland (the "Rowland Declaration") which included the expert witness disclosures required under Fed. R. Civ. P. 26(a)(2).  Prior to the submission of claim construction briefs and the exchange of expert declarations, Intervet and Merial had agreed that their respective claim construction experts, such as Dr. Rowland, would be deposed during the period between opening and answering claim construction briefs.

---

[2] Case No. 06-CV-00658 in the U.S. District Court for the District of Columbia.

[3] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 980 (Fed. Cir. 1995).

On Friday, May 4, 2007, Merial served a subpoena on Dr. Rowland.[4]  The subpoena

---

[4] For the benefit of context, the court notes that this subpoena, in its entirety, states as follows:

You are requested to produce for inspection and copying as set forth in the attached subpoena the documents listed below:

1.      All non-identical drafts of your Declaration, including, but not limited to, all handwritten or typed drafts of your Declaration, and including any outlines of your Declaration and any notes related to your Declaration prepared or taken in advance of or during the preparation of your Declaration.

2.      All documents, data, communications or other information you generated, reviewed or considered in generating or preparing your Declaration or informing the opinions expressed in your Declaration.

3.      All annotated copies of any documents and things responsive to Request No.2 above.

4.      All documents reflecting, referring, or relating to any communications with others regarding or relating to any of (1) the subject matter of your Declaration; (2) any of the opinions expressed in your Declaration; (3) the '601 patent; (4) the *Intervet v. Merial* litigation; (5) the *Merial v. Intervet* litigation, (6) the Intervet PCV-2 vaccine; and/or (7) the '594 patent, including, but not limited to, any such communications with Intervet, Kenyon, or any experts or consultants for Intervet or Kenyon, including, but not limited to, Dr. Fernando A. Osorio, M.V., Ph.D.

4.      All documents that were provided to you by either Intervet, Kenyon, or any experts or consultants for Intervet or Kenyon, including, but not limited to, Dr. Fernando A. Osorio, M.V., Ph.D., that reflect, refer, or relate to any of (l) the subject matter of your Declaration; (2) any opinions expressed in your Declaration, (3) the '601 patent; (4) the *Intervet v. Merial* litigation; (5) the *Merial v. Intervet* litigation, (6) the Intervet

commanded the production of various documents[5] by the following Wednesday (May 9, 2007) at 9:00 a.m., and also required Dr. Rowland to appear for a deposition on May 16, 2007.

On May 9, 2007, in response to the subpoena, Dr. Rowland produced approximately

PCV-2 vaccine; and/or (7) the '594 patent.

5.      All articles, letters, papers, or abstracts, presentations, publications, authored, co-authored, published, submitted for publication, or given by you relating to the subject matter of your Declaration, including, but not limited to, any such articles, letters, or papers relating to PCV, PCV-1, PCV-2, vectors, Open Reading Frames (ORFs), or epitopes,

6.      All documents that reflect, refer, or relate to any payment or compensation, or expected payment or compensation, for your services in the *Intervet v. Merial* litigation, including, but not limited to, any retainer or engagement agreements.

7.      All documents that reflect, refer, or relate to any payments to you or your employer by Intervet relating to any research, tests, trials, or experiments relating to the Intervet PCV-2 vaccine.

8.      All documents that reflect, refer, or relate to the '601 patent, the application that resulted in the '601 patent, and/or any patent application to which the '601 patent claims priority, including, but not limited to, all documents that reflect, refer, or relate to any infringement or alleged infringement, scope, validity, or enforceability of the '601 patent.

9.      All documents that reflect, refer or relate to any cases for which you have been retained as an expert witness, including but not limited to all reports, deposition transcripts, trial transcripts, and engagement agreements.

[5] The court notes that the subpoena actually seeks 10 categories of documents, but due to misnumbering, reflects only 9 categories.

1,300 pages of documents.  He also served written objections to Merial's requests for production.  On May 16, 2007, Dr. Rowland was deposed.  On June 11, 2007, asserting that Dr. Rowland had failed to produce certain requested items, Merial filed the instant motion in this court.

As earlier indicated, Merial now seeks an order compelling Dr. Rowland to provide materials in what Merial deems to be full and complete compliance with the subpoena, and to require Dr. Rowland to appear for further deposition testimony after he has provided all of those materials.  The thrust of Merial's motion, at least when it was filed, was that the requested discovery from Dr. Rowland was necessary to prepare for the *Markman* hearing in the D.C. Action; according to Merial, however, Dr. Rowland's testimony is relevant not only for *Markman* purposes but also Merial's contention that Intervet has infringed and continues to infringe the '601 patent.

The *Markman* hearing originally was scheduled for June 21, 2007, and later was continued to August 6, 2007.  The Hon. Henry H. Kennedy, Jr., the presiding U.S. District Judge in the D.C. Action, conducted the *Markman* hearing on August 6 and 7, 2007.  During the August 23, 2007 hearing in this court, it was disclosed that the *Markman* hearing had proceeded without any significant objection by Merial based on the unresolved motion to compel in this court involving Dr. Rowland.  In any event, the parties expect Judge Kennedy to issue his *Markman* claim construction ruling sometime prior to a status conference that he has scheduled for October 5, 2007.

Evidently, November 16, 2007 is the fact discovery cutoff date in the D.C. Action.

Expert discovery in the D.C. Action is slated to begin December 17, 2007 and end on March 7, 2008.

### III.  Analysis & Discussion

Merial contends that Dr. Rowland failed to diligently search for and produce all of the documents technically covered by the subpoena.   This is a scenario which, in the undersigned's nearly thirty years experience as a trial lawyer and a judge, is not all that uncommon.  Despite dealing with a fairly typical problem, the written submissions by Merial and Dr. Rowland in this matter unfortunately are cluttered by numerous digressions on minor or immaterial points.   The problem is compounded by accusations about "schemes," spoilation of evidence, and otherwise sanctionable conduct.  Even in high-stakes litigation, and even taking into account the entirely appropriate call for zealous advocacy, the pleadings filed in this case frankly are a bit beyond the pale.  Merial has submitted the requisite certificate pursuant to D. Kan. Rule 37.2 that counsel conferred in a good faith attempt to resolve their dispute before Merial filed the instant motion.  Still, the court is inclined to believe that had the parties and counsel spent half the time and fees consumed by the briefing process working toward practical compromises, on their worst day they could have arrived at a better solution than the court can hope to on its best.  The parties' written submissions here, particularly given the patent at issue, bring to mind the Seventh Circuit's oft-quoted bromide that "[j]udges are *not* like pigs, hunting for truffles buried in briefs."[6]  In any event, the court will endeavor to slog through the record and rule as best it can.

---

[6] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (emphasis added).

Based on the record presented about the underlying circumstances involved, the court does not hesitate in finding that Dr. Rowland made reasonable, albeit imperfect, efforts to produce documents in response to Merial's subpoena. This order will explain what additional documents Dr. Rowland will have to retrieve and produce, at which time he will sit for additional deposition testimony.

Dr. Rowland and Intervet argue that the issues raised in Merial's motion are moot or at least are not terribly pressing in light of the fact that the *Markman* hearing already has been conducted by Judge Kennedy in the D.C. Action. Merial argues that, while a *Markman* ruling is anticipated within the month, there is no ruling yet. Merial also argues that the *Markman* record remains open. In this regard, Merial cites *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,[7] and *Honeywell International, Inc. v. United States*,[8] for the proposition that claim construction is a "rolling" process and that claim constructions are revisited or altered as the record is developed. Merial also argues that the requested information will be used to develop the record in the event of any appeal.

**A.  Document Request Issues**

A bit narrower than what purportedly is called for by the subpoena, the specific documents sought by Merial's motion appear to be as follows:

---

[7] 302 F.3d 1352, 1361 (Fed. Cir. 2002).

[8] 70 Fed. Cl. 424, 447-48 (Fed. Cl. 2006).

**1)** **An unpublished paper on PCV-2 and all drafts thereof, and drafts of a published paper on PCV-2.**[9] As to the unpublished paper on PCV-2, Dr. Rowland asserts in his responsive brief (doc. 30 at 11), and at the hearing, that a version (presumably the final version) of this paper has been produced to Merial by K-State in response to a separate subpoena that was served on the university on or about May 21, 2007.[10] But Merial now says

_____

[9] As earlier indicated, Request No. 5 in the subpoena that Merial served on Dr. Rowland seeks "[a]ll articles, letters, papers, or abstracts, presentations, publications, authored, co-authored, published, submitted for publication, or given by you relating to the subject matter of your Declaration, including, but not limited to, any such articles, letters, or papers relating to PCV, PCV-1, PCV-2, vectors, Open Reading Frames (ORFs), or epitopes."

[10] Here again, for the benefit of context, the court will set forth all of the document requests in Merial's K-State subpoena.  They are as follows:

> You are requested to produce for inspection and copying as set forth in the attached subpoena the documents listed below:

> Request No. 1.
> Each document or thing concerning any communication, understanding, license, or agreement between Kansas State University and Intervet relating to any porcine circovirus diagnostic or vaccine.

> Request No. 2.
> Each document or thing concerning Invervet's Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector.

> Request No. 3.
> Each document or thing concerning the conception, research, development, testing, regulatory approval, manufacture, production, marketing, sale, or use of Intervet's Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector.

> Request No. 4.
> Any report, summary, compilation, or abstract concerning sales of or royalties from Intervet's Procine

Circovirus Vaccine, Type 2, Killed Baculovirus Vector.

Request No. 5.

Each document or thing concerning a royalty based On Intervet's Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector.

Request No. 6.

Each document or thing concerning a license or agreement under which Kansas State University granted any rights relating to a porcine circovirus diagnostic or vaccine, including but not limited to any royalties received or any other economic consideration obtained by Kansas State University.

Request No. 7.

Each document or thing concerning a license or agreement under which Kansas State University received any rights relating to a porcine circovirus diagnostic or vaccine, including but not limited to any royalties paid or any other economic consideration provided by Kansas State University.

Request No. 8.

Each document or thing concerning any payment or other compensation received by an employee or agent of Kansas State University based on sales of a porcine circovirus diagnostic PI vaccine, including but not limited to any payment or other compensation furnished to Dr. Raymond Rowland or Dr. Richard Hesse.

Request No. 9.

Each document or thing concerning a patent application pertaining to a porcine circovirus diagnostic or vaccine.

Request No. 10.

Each document or thing concerning a patent application relating to a diagnostic or vaccine described in KSURF Technology Licensing Profile Ref. No. 06-41, including but not limited to patent applications, and drafts thereof, directed to diagnostics or vaccines associated with PCV2-321 or PCV2-422 (or both).

Request No. 11.

        Each document or thing concerning the funding for the research resulting in a diagnostic or vaccine described in KSURF Technology License Profile Ref. No. 06-41, including but not limited to diagnostics or vaccines associated with PCV2-321 or PCV2-422 (or both).

Request No. 12.

        Each document or thing concerning a transfer, grant, conveyance, assignment, or license of any interest in or right under any patent or patent application pertaining to a porcine circovirus vaccine.

Request No. 13.

        Each document or thing concerning an analysis, investigation, inspection, examination, measurement, or test of any DNA molecule isolated from a porcine circovirus (e.g.,Porcine Circovirus Type 2).

Request No. 14.

        Each document or thing concerning an analysis, investigation, inspection, examination, measurement, or test of any porcine circovirus vaccine.

Request No. 15.

        Each document or thing concerning any contacts or communications between(a) Kansas State University or anyone on Kansas State University's behalf and(b) Intervet or anyone on Intervet's behalf, including but not limited to Intervet's attorneys, (e.g., Kenyon and Kenyon, LLP).

Request No. 16.

        Each document or thing concerning the isolations of a porcine circovirus (e.g., Porcine Circovirus Type 2), including but not limited to research notebooks, laboratory notebooks, correspondence, invention disclosures, analyses, studies, experiments, reports, sketches, interview reports or summaries, descriptions of tests or studies, and results or conclusions reached from such tests or studies.

it requires all versions of this paper, specifically, including but not limited to, drafts showing

Dr. Rowland's annotations.

_____

Request No. 17.
    Each document or thing concerning the isolation of a DNA molecule from a porcine circovirus (e.g., Porcine Circovirus Type 2), including but not limited to research notebooks, laboratory notebooks, correspondence, invention disclosures, analyses, studies, experiments, reports, sketches, interview reports or summaries, descriptions of tests or studies, and results or conclusions reached from such tests or studies.

Request No. 18.
    Each document or thing concerning the conception, research, development. testing, regulatory approval, manufacture, production, marketing, sale, or use of a diagnostic or vaccine based on a provine circovirus (e.g., a diagnostic or vaccine based on Porcine Circovirus Type 2), including but not limited to research notebooks, laboratory notebooks, correspondence, invention disclosures, analyses, studies, experiments, reports, sketches, interview reports or summaries, clinical data, descriptions of tests or studies, and results or conclusions reached from such tests or studies.

Request No. 19.
    Each document or thing concerning Dr. Raymond Rowland's work as an expert or consultant for Kenyon & Kenyon LLP or Intervet in the *Intervet v. Merial* litigation.

Request No. 20.
    Each document or thing concerning any patent application or patent in whole or in part assigned to or owned by Merial concerning porcine circovirus, including but not limited to the '601 patent.

    The court has reviewed the subpoena that Merial served on K-State and finds each of the 20 requests *incredibly* broad in scope. Merial should consider itself fortunate that K-State produced anything instead of just objecting.

As to the published paper, in its motion, Merial states that it has obtained a copy of the paper independently.  However, at the hearing, Merial requested drafts of the published paper.

The court finds that Request No. 5, even when construed with the general instructions and definitions which proceed the requests, does not seek *drafts* of any of the requested documents, which includes the published and unpublished papers at issue.  The court is unpersuaded that Merial is entitled to this material.  Therefore, this part of the motion is denied.

**2)      An abstract from a scientific meeting Dr. Rowland authored on PCV-2.**[11]

Dr. Rowland argues that this document is publicly available and that, in his written objections to the subject subpoena, "made clear that he would not be producing publicly available materials."  Of course, the law is well-settled that the mere fact that a document might be available through another means (i.e., "publicly available" or otherwise) does not relieve a person of his obligation to produce a document pursuant to the subpoena.[12]

---

[11] This also is the subject of Request No. 5 in the subpoena that Merial served on Dr. Rowland (*see* footnote 4 above).

[12] *See Am. Maplan Corp. v. Heilmayr*, No. 00-2512, 2001 WL 1718366, at *2 (D. Kan. July 27, 2001).  *See also St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000) (citing *City Consumer Servs. v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) (stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record") (citing *Petruska v. Johns-Manville*, 83 F.R.D. 32, 35 (E.D. Pa.1979)); *Associated Wholesale Grocers, Inc. v. United States*, No. 86-2261, 1989 WL 110300, at *3 (D. Kan. June 7, 1989) (stating that defendant's argument of equal accessibility is not sufficient to resist discovery) (citing *City Consumer Services*)).

Therefore, Dr. Rowland's specious objection is overruled.  He shall produce the requested document.  In this respect, Merial's motion is granted.

      **3)**      **Copy of Dr. Rowland's patent application relating to PCV-2.**[13]  Dr. Rowland asserts in his responsive brief (doc. 30 at 11) that a version (presumably the final version) of this paper already has been produced to Merial by K-State in response to a separate subpoena.  Merial understandably wants all versions of the application.  The court agrees that Merial is entitled to this material.  Therefore, this part of the motion is granted.

      **4)**      **Documents relating to Dr. Rowland's prior expert consultancy.**[14]  Dr. Rowland asserts that the materials related to his prior expert consultancy relate to a case *ten* years ago between companies that are not parties to this suit and regarding a virus that is not claimed in Merial's patent.  In this regard, Dr. Rowland largely relies on Fed. R. Civ. P. 26(a)(2)(B), which requires an expert to disclose "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding *four* years" (emphasis added).  Dr. Rowland argues that these materials are outside of the bounds of discovery contemplated by Rule 26(a)(2) and that Merial should not be allowed to use its

---

[13] Request No. 8 in the subpoena served on Dr. Rowland seeks "[a]ll documents that reflect, refer, or relate to the '601 patent, the application that resulted in the '601 patent, and/or any patent application to which the '601 patent claims priority, including, but not limited to, all documents that reflect, refer, or relate to any infringement or alleged infringement, scope, validity, or enforceability of the '601 patent."

[14] Request No. 9 in the subpoena served on Dr. Rowland seeks "[a]ll documents that reflect, refer or relate to any cases for which you have been retained as an expert witness, including but not limited to all reports, deposition transcripts, trial transcripts and engagement agreements."

overly broad subpoena to bury him in this type of irrelevant "busy work."

Merial argues that discovery of experts is not nearly as limited as Dr. Rowland claims. In this regard, Merial cites *Moses v. Halstead*, in which another member of this court explained:

> The text of Rule 26(a)(2)(B) provides for the mandatory disclosure of certain expert witness information, even without a request from the opposing party. However, there is no indication on the face of the rule to suggest that a party is absolutely prohibited from seeking any additional information about an opponent's expert witnesses. In fact, Rule 26(b)(1) describes the scope of allowable discovery as follows: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." In addition to the text of Rule 26, the Court finds it to be significant that the Advisory Committee, which created the mandatory disclosure requirement in Rule 26(a)(2)(B), explicitly states that
>
> > [t]he enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information without a discovery request. Nor are parties precluded from using traditional discovery methods to obtain further information regarding these matters, as for example asking an expert during a deposition about testimony given in other litigation beyond the four-year period specified in Rule 26(a)(2)(B).
>
> *Western Resources* thus stands for the proposition that requests for documents are not objectionable merely because they seek documents outside the scope of the expert disclosures required by Rule 26(a)(2)(B).[15]

--------

[15] 236 F.R.D. 667, 677 (D. Kan. 2006) (Waxse, M.J.) (citations omitted) (quoting *W. Res., Inc. v. Union Pac. R.R.*, No. 00-2043, 2002 WL 1822428, at *4 (D. Kan. July 23, 2002)).

In light of cases like *Moses v. Halstead*, Merial is correct that expert discovery is not as limited as Dr. Rowland suggests.  However, *Moses v. Halstead* also suggests that Merial's document request is over broad on its face, not only in a temporal sense but also because of its open-ended use of language such as "reflect, refer or relate" and "including but not limited to."[16]  That is, this sort of document request, as a practical matter, is nearly impossible to interpret and police in terms of actual compliance.  Therefore, Dr. Rowland need only produce, for the ten-year period preceding the service date of the subpoena, for all cases in which he was retained as an expert witness, the final versions of reports, deposition transcripts, trial transcripts, and engagement agreements in his possession, custody, or control.  To this limited extent, Merial's motion is granted.

5)   **Documents relating to the trials (research) Dr. Rowland has conducted on Intervet's PCV-2 vaccine.**[17]  Merial argues that Dr. Rowland testified that he has directed field trials for Intervet's PCV-2 vaccine with one of his colleagues, Dr. Dick Hesse.  Merial further argues that Dr. Hesse developed Intervet's PCV-2 vaccine, in particular, the product that infringes Merial's '601 patent.  Merial asserts that documents relating to Dr. Rowland and Dr. Hesse's field trials of Intervet's PCV-2 vaccine, or any other documents relating to

---

[16] *Id.* at 672.

[17] Request No. 4 in the subpoena served on Dr. Rowland seeks "[a]ll documents reflecting, referring, or relating to any communications with others regarding or relating to any of (1) the subject matter of your Declaration; (2) any of the opinions expresses in your Declaration; (3) the '601 patent; (4) the *Intervet v. Merial* litigation; (5) the *Merial v. Intervet* litigation; (6) the Intervet PCV-2 vaccine; and/or (7) the '594 patent, including, but not limited to, any such communications with Intervet, Kenyon, or any experts or consultants for Intervet or Kenyon, including, but not limited to, Dr. Fernando A. Osorio, M.V., Ph. D."

Intervet's PCV-2 vaccine, are relevant to this case (including but not limited to the infringement issues, *and* Dr. Rowland's bias as an expert for Intervet), but Dr. Rowland did not produce any of these documents.

Dr. Rowland's position seems to be that all of the documents have been produced by K-State. But in its reply brief (doc. 36 at 16), and during the August 23, 2007 hearing, Merial argued that Dr. Rowland may have *other* documents beyond those that were produced by K-State and that he should be ordered to produce those materials. The court agrees with Merial. Quite mindful that undoubtedly there will be some overlap or duplication involved, Dr. Rowland shall produce *all* such documents in his possession, custody, or control that are reasonably responsive to this request. In this regard, Merial's motion is granted.

**6)      All relevant e-mails and attachments.**  Merial argues that Dr. Rowland should be compelled to search for and produce all documents, and in particular e-mails, that are responsive to each of the requests in the subpoena. Dr. Rowland objects on the basis that this request is over broad, in that it would require him to search all of his papers and electronic documents for any documents "relating" to any of the terms "PCV, PCV-1, PCV-2, vectors, Open Reading Frames or epitopes." The court agrees and therefore sustains Dr. Rowland's objection. In this respect, Merial's motion is denied.

**7)      Drafts of Dr. Rowland's declaration.**[18]  Merial argues that Dr. Rowland is

---

[18] Request No. 1 in the subpoena served on Dr. Rowland seeks "[a]ll non-identical drafts of your Declaration, including, but not limited to, all handwritten or typed drafts of your Declaration, and including any outlines of your Declaration and any notes related to your Declaration prepared or taken in advance of or during the preparation of your Declaration."

obligated to produce the laptop computers and "pen drive"[19] on which drafts of his declaration were prepared.  Merial further argues Dr. Rowland and Intervet's lawyers should be sanctioned for their "scheme" to avoid producing drafts of Dr. Rowland's declaration. Merial requests that, as a sanction for their inappropriate conduct, the court should require Dr. Rowland and Intervet's lawyers to compensate Merial for the costs involved in having the "pen drive" and laptop computer hard-drives forensically analyzed to determine if any drafts of the declaration can be recovered.

Dr. Rowland argues that: (1) prior to his deposition, Merial never sought discovery of drafts of expert reports; and (2) no drafts of Dr. Rowland's declaration exist, and thus cannot be produced.  Dr. Rowland also argues Merial's request that Intervet's attorneys turn over the hard drives from their laptops and the pen drive used in the drafting of the Rowland Declaration for "forensic analysis" should be rejected as it has nothing to do with Dr. Rowland, has no place before this court other than for inflammatory effect, and that this is the exact type of situation that Fed. R. Civ. P. 45(c)(3)(A) protects against.

The relevant time-line of events is best derived from two sources.  The first is Dr. Rowland's own deposition  testimony (as cited by Merial).  The second is a supplemental declaration of William G. James, II, a partner at Kenyon & Kenyon, LLP ("Kenyon"), the law firm that represents both Intervet and Dr. Rowland (doc. 49).

On August 11, 2006, Merial served a request for production on Intervet pursuant to

---

[19] A pen drive simply is a small device which plugs into laptop computer.  It can store very large amounts of data.  The device is also sometimes called a USB flash drive, thumb drive, pocket drive, or jump drive.

Fed. R. Civ. P. 34 requesting: "[a]ll documents prepared in connection with this civil action by each person whom Intervet may call as an expert witness at the trial of this civil action." This request was No. 52 among 84.  While Merial argues this request is broad enough to cover drafts of experts' reports, the fact remains that the request does not specifically mention such drafts.

In a March 28, 2007 letter to Intervet's lawyers, Merial stated, in pertinent part: "Merial has considered Intervet's suggestion that the parties will not be required to retain or produce drafts of expert(s)' reports and cannot agree to it."  Significantly, though, during the August 23, 2007 hearing, it was acknowledged that Merial and Intervet *never* reached an explicit and specific agreement that drafts of their experts' reports would be preserved.

Dr. Rowland arrived at Kenyon's Washington, D.C. offices on April 30, 2007, staying through May 2, 2007, to finalize his declaration.  Prior to his arrival, an electronic document had been put together by Cedric Tan, an associate in the Kenyon firm.  The electronic document was prepared and stored on a portable USB memory device connected to a laptop computer.  Dr. Rowland testified that it was possible this draft declaration already contained the claim constructions that Intervet was proposing, thus reflecting the constructions that Intervet wanted Dr. Rowland to espouse as his own.  Mr. James claims the document included the background and experience of Dr. Rowland, a description of the '601 patent, and the constructions of the '601 patent claim terms that had been developed by Dr. Rowland and the Kenyon attorneys during their discussions the preceding months.

Over the course of April 30 to May 2, 2007, Dr. Rowland worked on the electronic document at various times with Messrs. James and Tan and Ms. Patrice Jean, also an associate with the Kenyon firm. Dr. Rowland saved all of his revisions and edits to the documents on the pen drive. All revisions were saved over the original file, and no different versions were saved on the pen drive. Mr. James claims that during the time he worked with Dr. Rowland on May 2, 2007, Dr. Rowland had the pen drive plugged into his personal laptop and he personally entered and saved all of the edits in the document on the pen drive. It was Mr. James' understanding that during the time that Mr. Tan and Ms. Jean were working with Dr. Rowland, most changes to the electronic document were entered by Dr. Rowland using his laptop, although some changes may have been input by Kenyon attorneys. Mr. James states that during this time the pen drive was only plugged into Kenyon laptops and Dr. Rowland's personal laptop. He claims the document was not printed out until just prior to its submission to the court in the D.C. Action. Mr. James states that he has been informed by Kenyon's information technology ("IT") department that Kenyon's computer system does not audit print jobs and therefore does not have the ability to identify or recover documents, such as Dr. Rowland's declaration.

Mr. James states that after the declaration was completed and filed, the pen drive in question was still connected to the Kenyon laptop in one of the Kenyon conference rooms. Mr. Rowland has provided, in detail, the steps he has taken to locate the pen drive. However, the pen drive remains missing. Mr. James also states that he has had his IT department search all the computers the pen drive could have been connected to for any version of the

documents.  He states that one document was found on the hard drive of a single Kenyon loaner laptop (i.e., not assigned to a particular attorney).  The document is titled "Declaration of R. Robert Rowland Ph.D."  He claims the document is different from the Rowland Declaration that was ultimately filed in the D.C. Action.  Mr. James states that he does not believe this particular document was the original document shown to Dr. Rowland on April 30, 2007, or that this particular document was ever shown to Dr. Rowland.

Merial argues that although Dr. Rowland and Intervet's lawyers have successfully destroyed many relevant drafts of the declaration, some prior draft information still may be on the pen drive itself, and that the cache memory of the computers that Dr. Rowland used may still have some or all of the drafts.  If such drafts have not been written over, Merial believes that forensic specialists may be able to recover them.

As evidenced by the parties' briefs, courts have taken various positions with regard to whether an expert must retain and produce drafts of his/her report.  In *Trigon Insurance Co. v. United States*,[20] cited by Merial, the court cited various other cases that have held that drafts of experts' reports are discoverable.  "Courts have even extended the scope of the rule [Fed. R. Civ. P. 26(a)(2)(B)] to allow disclosure of 'drafts of reports or memoranda experts have generated as they develop the opinions they will present at trial.'"[21]  The court in *Trigon*

---

[20] 204 F.R.D. 277 (E.D. Va. 2001).

[21] *Id.* at 283 (citing *B.C.F. Oil v. Consol. Edison Co. Of N.Y., Inc.*, 171 F.R.D. 57, 62 (S.D. N.Y. 1997) (quoting *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 536 (N.D. Cal. 1987)); *W.R. Grace & Co. v. Zotos Int'l*, No. 89-CV-838S(F), 2000 WL 1843258, at *10 (W.D. N.Y. 2000) ("Courts have held that drafts of reports prepared by testifying experts are subject to disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(B).")).

opined that "[g]iven that drafts may be used for cross-examination and other purposes, and are not protected by another doctrine of privilege, drafts should be disclosed where, as here, they are not solely the product of the expert['s] own thoughts and work." [22]

On the other hand, Dr. Rowland argues that *University of Pittsburgh v. Townsend*,[23] is directly on point on this issue. In *Townsend*, the University of Pittsburgh (the "University") sued several parties who allegedly subverted and misappropriated the University's rights and interest in valuable medical scanning technology. Defendants served a request for production on the University seeking "all documents provided to or by . . . [the University], revised by, relied upon, or otherwise used in consultation with or as a basis for consultation with, any expert witness identified" by the University pursuant to Fed. R. Civ. P. 26(a)(2). The University objected that the request was premature and stated that responsive documents would be produced in accordance with Rule 26(a)(2) and the Case Management Order. Defendants subsequently issued two subpoenas to two of the University's experts requesting they appear for depositions and produce all documents reviewed or relied on in preparing the expert reports required by Rule 26(a)(2)(B). The requests specifically included all drafts of the reports. At their depositions, the experts testified that they did not retain previous drafts of their reports. The University's counsel added that it was their practice to instruct experts not to retain drafts.

---

[22] *Id.*

[23] No. 3:04-cv-291, 2007 WL 1002317 (E.D. Tenn. Mar. 30, 2007).

Defendants argued that, under Rule 26(a)(2), experts have an affirmative duty to preserve draft reports. They argued that because discoverable evidence was destroyed, the experts should be precluded from testifying at trial.  The University countered that, until defendants served the subpoenas shortly before the experts' depositions, there were no requests for production of drafts. Once the subpoenas were served, no drafts were destroyed.

The court in *Townsend* held that, contrary to defendants' assertion, Rule 26(a)(2) does not create an affirmative duty on the part of experts to preserve draft reports.  The court also found that defendants' prior Rule 34 request for production of "all documents provided to . . ., revised by, relied upon, or otherwise used in consultation with or as a basis for consultation with, any expert witness" was "far from the model of clarity."  The subpoenas served by defendants on the University's experts included clear requests for draft reports. Only at that point, the court said, did they have a duty to retain drafts and produce them at their depositions. Earlier destruction of drafts was not a basis for excluding the experts' testimony.[24]

Similarly, in the case at bar, it is unclear as to whether Dr. Rowland really was under a legal obligation to produce all of the drafts of his declaration, especially since the Rule 34 request served by Merial on Intevet did not specifically seek drafts, and the fact that the subpoena specifically seeking any drafts of the declaration was not served on Dr. Rowland until after he had completed the declaration.

---

[24] *Id.* at *4.

Based on the record presented, the court is unable to find that the process in which Intervet, through its counsel and Dr. Rowland, prepared the declaration was an "intentional scheme" meant to destroy discoverable evidence.  In fact, during the hearing on August 23, 2007, the court inquired how Merial worked with its retained claim construction expert witness.  Mr. Kowalski, one of Merial's lawyers, stated that he and Mr. Elsevier, another one of Merial's lawyers, sat down with their expert witness, Dr. Christopher Chase, with a lap top computer that was "brand spanking new, nothing on it."  With one of Merial's lawyers supposedly only serving as a "scribe," the declaration was written, edited, and finalized in a single day, with the "save" key never being hit.  Merial stated that the last thing they did at the end of the day was save the document to a CD that has been preserved in a locked drawer.  Merial also claimed that the computer has been preserved should Intervet seek production of its hard drive for a forensic analysis.  Significantly, however, even if Intervet and this court were to suspend their credulity about the limited involvement of Merial's counsel, it is uncontroverted that a forensic analysis of the hard drive would not provide any information about whether a particular addition or deletion to the documents was suggested by the expert or one of the lawyers involved in the process.   Therefore, the court is unpersuaded that what Merial has accused Intervet of doing is materially different than the way in which Merial acted.

In any event, given the representations by Mr. James, the court cannot order production of the pen drive as it apparently does not exist.  It does appear, however, there is a possibility that prior versions or drafts of Dr. Rowland's declaration still may be available

to some extent on Dr. Rowland's laptop computer, i.e., because the above-described pen drive at times was plugged into that computer.  During the August 23, 2007 hearing, the court requested the parties work out some protocol for production of the material in issue. Indeed, the court made some specific, practical suggestions in this regard, which unfortunately but predictably have gone unheeded.  Upon reflection, given the unique facts presented here, the court has decided that Dr. Rowland will not be required to produce his laptop computer for a forensic analysis as requested by Merial.

**B.  Miscellaneous Issues**

In addition to disputes over the above-described categories of documents, the instant motion presents a few other issues, as follows:

**1)      Confidentiality**.  Merial claims that during Dr. Rowland's deposition he refused to produce certain of the above-referenced categories of documents due to confidentiality concerns.  Merial argues this objection lacks merit because a protective order has been filed in the D.C. Action.   The court agrees.

**2) Continuation of Dr. Rowland's Deposition**.  Dr. Rowland argued that he should not be required to appear for a second deposition.  The court respectfully disagrees.   Dr. Rowland shall appear for a follow-up deposition limited to four hours and the scope of the inquiry shall be limited to only the supplemental materials ordered produced in this order.

## IV.  Order

In consideration of the foregoing,

IT IS HEREBY ORDERED that, without prejudice to Merial's right to file a motion

in the D.C. Action to disregard or exclude some or all of Dr. Rowland's testimony, Merial's motion to compel in this court (**doc. 1**) is granted in part and denied in part.  Dr. Rowland shall produce all of the documents called for by this order by **September 10, 2007**.  On a date and time convenient to Dr. Rowland and counsel of record in the D.C. Action for Merial and Intervet, Dr. Rowland shall be produced to Merial for another deposition by **September 24, 2007**.

Dated this 30th day of August, 2007, at Kansas City, Kansas.

s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge